UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ISHTIAQ AHMED,

                Plaintiff,

  -against-

CITY OF NEW YORK, RICHARD TAYLOR, NATASHA MOSELEY-JONES, VIODELYS BRATHWAITE, ANTHONY NEVANDRO, YEVGENIY BELOV, and NYPD Members of Service JOHN and JANE DOES #1-15,

                Defendants.

No.    22-cv-8007

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Ishtiaq Ahmed, by and through his attorneys Kaufman Lieb Lebowitz & Frick LLP and the Law Office of Shakeer Rahman, alleges as follows:

## INTRODUCTION

1. Plaintiff Ishtiaq Ahmed brings this action to challenge his lawless arrest and detention for a crime that NYPD officers fabricated from thin air.

2. An NYPD officer filed a report that Plaintiff violently assaulted a community member during an interaction at the Makki Masjid mosque in Brooklyn on June 4, 2021. But CCTV video shows that the assault *never happened*. Worse, the video reveals that Plaintiff's interaction with the community member happened directly within view of the NYPD officer who filed this false report.

3. Likewise, the supposed victim of the assault has publicly stated that it *never happened* and that he did not speak to police, nor did he review or sign any documents for police.

1

4. Instead, both the initial report and a later sworn criminal complaint were vindictively fabricated by the NYPD to harass and intimidate Plaintiff, a volunteer in the mosque's management and leadership team, and the entire mosque community.

5. Several weeks before the arrest, Plaintiff had upset the NYPD by enforcing social distancing guidelines and telling an officer that she could not enter the mosque's first-floor prayer room. Similarly, mosque management had recently told the NYPD that its officers were not permitted to enter the mosque uninvited and seize the pulpit during Friday prayers to make speeches promoting the NYPD—a practice that had become commonplace.

6. Thus, after Plaintiff barred the officer from entering the crowded prayer room on June 4, 2021, the NYPD fabricated false charges against Plaintiff to intimidate him and mosque management for objecting to their unfettered access to the mosque.

7. These scare tactics had the intended effect. Plaintiff was arrested and shamed in front of dozens of community members, handcuffed so hard his wrists bled, and detained for 24 hours, missing his daughter's middle school graduation. He was then forced to fight bogus charges for months until they were finally dropped. He lost his Taxi and Limousine Commission (TLC) license—his livelihood—and has suffered over a year of depression and anxiety. It was all for nothing.

8. Plaintiff is the victim of the worst kind of policing—conduct deliberately aimed to hurt the very citizens the police are charged with protecting. There was no legal justification for Plaintiff's arrest and detention. It was made with impunity, for the sole purpose of harming Plaintiff and intimidating his mosque community.

9. The NYPD's unlawful conduct cannot go unchecked. Plaintiff brings this case to seek accountability for his needless arrest and detention, and the horrific suffering he has experienced in its aftermath.

## JURISDICTION, VENUE, and CONDITIONS PRECEDENT TO SUIT

10. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a), and 1367(a).

11. Venue lies in the Southern District of New York under 28 U.S.C. § 1391(b)(1) because Defendant City of New York resides in this district within the meaning of 28 U.S.C. 1391(c)(2) and, on information and belief, all defendants reside in the State of New York.

12. On September 21, 2021, Plaintiff filed a timely notice of claim pursuant to General Municipal Law § 50-e upon Defendant City of New York through the Office of the Comptroller's online system.

13. On February 16, 2022, Plaintiff sat for an examination pursuant to General Municipal Law § 50-h.

## PARTIES

14. Plaintiff Ishtiaq Ahmed is a 41-year-old resident of Brooklyn, New York.

15. Defendant City of New York is a municipal corporation organized under the laws of New York with its principal place of business in Manhattan, New York.

16. At all relevant times, Defendant Richard Taylor was an NYPD Deputy Inspector. Defendant Taylor is sued in his individual capacity.

17. At all relevant times, Defendant Natasha Moseley-Jones was an NYPD Community Affairs Patrol Officer. Defendant Moseley-Jones is sued in her individual capacity.

18.     At all relevant times, Defendant Viodelys Brathwaite was an NYPD Patrol Officer. Defendant Brathwaite is sued in her individual capacity.

19.     At all relevant times, Defendant Anthony Nevandro was an NYPD Sergeant. Defendant Nevandro is sued in his individual capacity.

20.     At all relevant times, Defendant Yevgeniy Belov was an NYPD Sergeant. Defendant Belov is sued in his individual capacity.

21.     At all relevant times, Defendant John and Jane Does #1-15 were NYPD Members of Service. Defendant John and Jane Does #1-15 are sued in their individual capacities.

## JURY DEMAND

22.     Plaintiff demands a jury trial.

## FACTS

23.     On Friday, June 4, 2021, Plaintiff was working as a volunteer at the Makki Masjid mosque in a Brooklyn neighborhood often known as "Little Pakistan."

24.     As a hallway monitor before the Friday afternoon prayer, Plaintiff's job was to ensure that worshippers complied with social distancing restrictions and that none of the mosque's prayer chambers—including the first-floor room—became overcrowded.

25.     Shortly before 2:00 p.m., Defendants Taylor and Moseley-Jones entered the mosque, accompanied by four individuals who had previously identified themselves to the mosque community as police informants (all six collectively, the "Group"). One of these individuals was Adil Khan; another was Raja Azal Gul.

26. Both Defendants Taylor and Moseley-Jones had visited the mosque during Friday prayers in weeks past. Both officers were familiar with mosque leadership, and both knew Plaintiff was a part of the mosque's volunteer leadership.

27. The Group attempted to enter the first-floor prayer room.

28. Plaintiff and other mosque volunteers quickly approached them and instructed that only the people at the head of the Group (Defendant Taylor, Mr. Gul, and one other) could enter the room. The others (including Defendant Moseley-Jones and Mr. Khan) would have to go upstairs to the second-floor prayer room. Plaintiff prohibited the others from entering the first-floor prayer room because the room was already overcrowded, and Plaintiff knew that Defendant Taylor just wished to use the microphone in that room to make a short announcement from the pulpit.

29. Plaintiff subsequently closed the door to the first-floor prayer room, with Defendant Moseley-Jones and Mr. Khan outside the door. He began to escort Defendant Taylor to the microphone at the pulpit.

30. While Plaintiff was escorting Defendant Taylor, another suspected police informant, who was already inside the prayer room, walked to the door and opened it so that Defendant Moseley-Jones, Mr. Khan, and the two other suspected informants could enter. They entered the room despite Plaintiff's prior instruction that the room was too crowded.

31. When Plaintiff returned to the door, he noticed that the other Group members had entered the room. He asked them why they had entered after he told them that the room was full, and he directed them to go upstairs.

32. A few seconds later, Defendant Taylor approached the Group in the hallway, as he had completed his announcement to the congregation.

5

33.     Plaintiff again told the Group that there was no space left on the first floor, but they could pray upstairs. The Group—including Defendants Moseley-Jones and Taylor—then walked out of the mosque as Plaintiff held the door open.

34.     During the interaction, Plaintiff made no physical contact with any members of the Group. The entire interaction was polite and orderly. All interaction between Plaintiff and the Group happened within a few feet of Defendants Taylor and Moseley-Jones and all within their view.

35.     Also during the interaction, dozens of other worshippers were going upstairs to the larger, second-floor prayer room, just as Plaintiff had instructed the Group.

36.     After the prayer service had concluded, Defendant Moseley-Jones called Plaintiff on his cell phone and asked him to meet her outside the mosque.

37.     When Plaintiff went outside to meet Defendant Moseley-Jones, she pressed him again about why he did not permit the full Group to enter the first-floor prayer room. Plaintiff reiterated that he had simply been trying to comply with social distancing requirements and so had asked some members of the Group to pray upstairs.

38.     Unbeknownst to Plaintiff, Defendant Moseley-Jones returned to the 70th Precinct that afternoon and completed a report falsely alleging that Plaintiff had assaulted Adil Khan.

39.     This report falsely claimed that Mr. Khan "STATED THAT THE SUSPECT PUSHED HIM AND GRABBED HIS ARM AND SHOVED HIM OUT OF THE MOSQUE AS HE WENT INSIDE TO GO PRAY. THE SUSPECT THEN THREATENED THE C/V BY SAYING, 'GET OUT OF HERE BEFORE I GET YOU ARRESTED' AND THEN

SLAMMED THE DOOR CLOSE [SIC] TO THE MOSQUE." It further falsely states that the assault was not "visible by patrol" and that there were no witnesses.

40. The June 4th report lists Defendant Moseley-Jones as the Reporting/Investigating member of service, and it indicates that the report was filed at 4:30 p.m. that day. It was approved by Defendants Nevandro and Belov.

41. This fabricated report also indicates that it was changed at some point. It initially charged Plaintiff with non-criminal harassment, but that charge was "upgraded" to third-degree assault based on the false claim that Mr. Khan had complained of "PAIN AND BRUISING ON HIS RIGHT ARM FROM THE PERP GRABBING HIM AND SHOVING HIM."

42. Defendants made changes to the fabricated June 4th report with the intention of falsifying a basis to arrest Plaintiff and having him jailed rather than ticketed.

43. Three weeks later, on the afternoon of June 25, 2021, Plaintiff was again volunteering at Makki Masjid for the Friday prayer service.

44. After the prayer service concluded, while Plaintiff and other volunteers were tabulating the day's charitable donations from worshippers, Defendant Brathwaite arrived at the mosque with Defendants John and Jane Doe #1-15.

45. After Plaintiff identified himself, several Doe Defendants forcibly escorted him out of the room and handcuffed him. Plaintiff asked why he was being handcuffed, but the Doe Defendants did not answer and instead responded, "you have to go to the police station."

46. The Doe Defendants escorted Plaintiff outside the mosque in handcuffs and placed him inside a police vehicle.

7

47. A crowd of people outside the mosque observed the arrest, and videos of the arrest were later uploaded to social media websites including Facebook, causing Plaintiff harassment and shame.

48. Once inside the police car, Plaintiff asked a Doe Defendant to loosen his handcuffs because they had been fastened too tightly and the metal was causing him significant pain. They refused to loosen the handcuffs.

49. Doe Defendants transported Plaintiff to the 70th Precinct station, where he was detained and told that he would need to be taken to Central Booking.

50. During his transfer to Central Booking, Plaintiff again asked that his handcuffs be loosened due to the pain. The seat on the van that Plaintiff was chained to during this nearly hourlong drive was broken, and the metal handcuffs caused him extreme pain every time the van braked or went over a bump. Plaintiff was visibly bleeding from the handcuffs and continued to complain about his physical suffering. Doe Defendants nevertheless refused to loosen the handcuffs.

51. After he was placed in a cell in Central Booking, Plaintiff asked for food, but was refused.

52. The police detained Plaintiff overnight. He did not speak with anyone during this detention and was not removed from his cell until the next morning at approximately 7:00 a.m., when he was transported to court.

53. In court, Plaintiff was informed that he had been charged with assaulting Mr. Khan three weeks earlier, on June 4, 2021.

54. This prosecution was initiated by a criminal complaint in which Defendant Brathwaite claimed that Mr. Khan said that Plaintiff "GRABBED [HIM] ABOUT THE ARM AND THREW [HIM] OUT OF THE MASJID BUILDING, STATING IN SUM AND

SUBSTANCE, GET OUT OF HERE BEFORE I GET YOU ARRESTED," and that these actions caused bruising, substantial pain, fear, annoyance, and alarm. Defendant Brathwaite signed this complaint underneath a warning that false statements were punishable as a Class A misdemeanor.

55. Plaintiff immediately knew these charges were fabricated by police and protested the charges.

56. The charges against Plaintiff were altogether false. Both CCTV footage and firsthand eyewitness accounts by NYPD officers establish that at no point during the encounter did Plaintiff make physical contact with anyone in the Group. Nor did he threaten anyone. He did not even slam a door.

57. CCTV footage of the encounter captured the entire interaction between Plaintiff and Mr. Khan. This footage shows both that the encounter was peaceful and that it occurred within a few feet of the uniformed officers, including Defendant Moseley-Jones, who filed the June 4th report. Both Defendants Moseley-Jones and Taylor were part of the conversation and had a direct line of sight.

58. In addition, in a television news story about Plaintiff's arrest, Mr. Khan told a reporter from Voice of South Asia (VOSA) that Plaintiff "never touched me or beat me. The only thing that happened was that we had an argument and he never touched me or beat me. The only thing he said to me was that there was no more space left on the first floor to say my prayers and he asked me to pray upstairs. This is all that happened. I have no idea what was written in the police report.  I don't speak or read English. I have no knowledge of what was written about [Plaintiff]."

59. The news story also reported that Mr. Khan insisted he had no knowledge of the allegations and stated that he did not sign any documents to file a police report.

9

60. Plaintiff was released from custody on June 26, around 1:00 p.m. or 1:30 p.m., almost 24 hours after he was first arrested.

61. Despite press coverage and community outrage over the fabricated charges, Plaintiff's case was pending for over two months.

62. The case was dismissed for lack of evidence on September 2, 2021.

63. Plaintiff has suffered significant injuries as a result of Defendants' actions, including emotional, physical, and economic harm.

64. As a result of his arrest and detention, Plaintiff has repeatedly desired to commit suicide, has lost approximately twenty pounds, has experienced nightmares and traumatic flashbacks of the arrest, has had persistent difficulty concentrating, and has been unable to function properly in his professional and social life. These symptoms and injuries have been documented by Plaintiff's primary care physician along with two mental health professionals who treated Plaintiff after his false arrest and detention.

65. Physically, Plaintiff suffered lasting pain, stiffness, and weakness to his wrist as a result of the excessively tight handcuffs, for which he has needed physical therapy treatment.

66. Plaintiff's arrest also impacted his ability to work. Plaintiff's TLC license, which was the basis for his livelihood as a livery taxi driver, was suspended within three days of his arrest due to the open charges. Soon after, his livery taxi's TLC license plate was also suspended on the same basis. Plaintiff was forced to obtain temporary license plate tags for his taxi, so that he could continue to park it on the street. But as a result of the financial pressures caused by his arrest and TLC suspensions, Plaintiff soon sold the taxi altogether.

## CAUSES OF ACTION

### FIRST CLAIM
### 42 U.S.C. § 1983 – Fourth / Fourteenth Amendments – False Arrest
### Against All Defendants

67. Plaintiff realleges the preceding paragraphs as if set forth here.

68. Defendants caused Plaintiff to be arrested and imprisoned without probable cause to believe that he had committed any crime and without other lawful privilege, and/or failed to intervene to prevent Plaintiff from being so arrested, proximately causing injury.

69. Plaintiff did not consent to his arrest or confinement.

70. At all relevant times, Defendants were acting under color of state law.

71. Defendants' conduct was willful, wanton, and reckless.

72. As a result of these acts, Plaintiff suffered damages.

### SECOND CLAIM
### 42 U.S.C. § 1983 – Fourteenth Amendment – Evidence Fabrication
### Against Defendants Moseley-Jones, Taylor, and Brathwaite

73. Plaintiff realleges the preceding allegations as if set forth here.

74. Defendants Moseley-Jones and Taylor fabricated the report that Plaintiff assaulted Adil Khan on June 4, 2021. On June 25, 2021, Defendant Brathwaite swore out a false criminal complaint against Plaintiff.

75. Defendants Moseley-Jones, Taylor, and Braithwaite caused the fabricated report and/or complaints to be forwarded to prosecutors.

76. In the alternative, Defendant Taylor knew that Defendant Moseley-Jones fabricated a false report and knew that Defendant Brathwaite swore out a false criminal complaint, but he failed to intervene despite having reasonable opportunity to do so.

77. The fabricated evidence was likely to influence a jury's verdict on Plaintiff's guilt or innocence.

78. At all relevant times, Defendant Moseley-Jones, Taylor, and Brathwaite were acting under color of state law.

79. The conduct of Defendants Moseley-Jones, Taylor, and Brathwaite was willful, wanton, and reckless.

80. As a result of these facts, Plaintiff suffered damages.

### THIRD CLAIM
### 42 U.S.C. 42 U.S.C. § 1983 – Fourth/Fourteenth Amendments – Malicious Prosecution
### Against Defendants Moseley-Jones, Taylor, and Brathwaite

81. Plaintiff realleges the preceding paragraphs as if set forth here.

82. Defendants Moseley-Jones and Taylor fabricated their allegation that Plaintiff assaulted Adil Khan on June 4, 2021. On June 25, 2021, Defendant Brathwaite swore out a false criminal complaint against Plaintiff.

83. Defendants Moseley-Jones, Taylor, and Braithwaite caused the fabricated report and/or complaints to be forwarded to prosecutors.

84. By creating a false report and complaint and forwarding that information to prosecutors, Defendants Moseley-Jones, Taylor, and Brathwaite initiated a criminal proceeding against Plaintiff despite there being no probable cause for Plaintiff's prosecution.

85. In the alternative, Defendant Taylor knew that Defendant Moseley-Jones fabricated a false report and knew that Defendant Brathwaite swore out a false criminal complaint, but he failed to intervene to prevent the initiation of a criminal proceeding against Plaintiff, despite having reasonable opportunity to do so.

86. As a result of these actions, Plaintiff suffered a deprivation of liberty before criminal charges terminated in Plaintiff's favor.

87. Defendants Moseley-Jones, Taylor, and Brathwaite acted willingly, knowingly, with malice, and with the specific intent to deprive Plaintiff of his Constitutional rights.

88. As a result of these acts, Plaintiff suffered damages.

### FOURTH CLAIM
### 42 U.S.C. § 1983 – Fourth / Fourteenth Amendments – Excessive Force
### Against Defendant Brathwaite and John and Jane Does #1-15

89. Plaintiff realleges the preceding paragraphs as if set forth here.

90. Defendants used or caused to be used objectively unreasonable force against Plaintiff and/or failed to intervene to prevent the use of such force despite having a reasonable opportunity to do so, proximately causing injury.

91. At all relevant times, Defendants were acting under color of state law.

92. Defendants' conduct was willful, wanton, and reckless.

93. As a result of these acts, Plaintiff suffered damages.

### FIFTH CLAIM
### Battery – New York State Law
### Against Defendants the City of New York, Brathwaite, and John and Jane Does #1-15

94. Plaintiff realleges the preceding paragraphs as if set forth here.

95. By seizing Plaintiff through the use of unnecessary and gratuitous force, Defendants, acting within the scope of their employment as NYPD officers, committed a willful, unlawful, unwarranted and intentional battery upon Plaintiff.

96. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained injuries.

## SIXTH CLAIM
## False Arrest and Imprisonment – New York State Law
## Against All Defendants

97. Plaintiff realleges the preceding paragraphs as if set forth here.

98. Defendants intended to arrest and confine Plaintiff, and did in fact cause his arrest and confinement for approximately 24 hours.

99. Plaintiff was conscious of his confinement.

100. Plaintiff did not consent to his confinement.

101. Plaintiff's confinement was not privileged and was carried out in the absence of any reasonable suspicion, probable cause, or legal justification whatsoever.

102. At all relevant times, Defendants were acting in the scope of their employment as NYPD officers.

103. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained injuries.

## SEVENTH CLAIM
## Malicious Prosecution – New York State Law
## Against Defendants the City of New York, Moseley-Jones, Taylor, and Brathwaite

104. Plaintiff repeats the preceding allegations as if set forth herein.

105. Defendants Moseley-Jones and Taylor fabricated the allegation that Plaintiff assaulted Adil Khan on June 4, 2021. On June 25, 2021, Defendant Brathwaite swore out a false criminal complaint against Plaintiff.

106. By creating a false report and forwarding that information to prosecutors, Defendants Moseley-Jones, Taylor, and Brathwaite initiated a criminal proceeding against Plaintiff despite there being no probable cause for Plaintiff's prosecution.

14

107. As a result of these actions, Plaintiff suffered a deprivation of liberty before criminal charges terminated in Plaintiff's favor.

108. Defendants Moseley-Jones, Taylor, and Brathwaite acted willingly, knowingly, with malice, and with the specific intent to deprive Plaintiff of his rights.

109. At all relevant times, Defendants Moseley-Jones, Taylor, and Brathwaite were acting within the scope of their employment with the NYPD.

110. As a result of these acts, Plaintiff suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages in an amount to be determined at trial;

C. Reasonable costs and attorneys' fees under 42 U.S.C. § 1988:

D. Pre- and post-judgment interest to the fullest extent permitted by law; and

E. Any additional relief the Court deems just and proper.

Dated:   September 20, 2022
         New York, New York

KAUFMAN LIEB LEBOWITZ
& FRICK LLP

_____/s/_____
Alanna Kaufman
Samuel Barr*

18 E. 48th Street, Suite 802
New York, New York 10017
(212) 660-2332
akaufman@kllflaw.com

* Pro hac vice application forthcoming

LAW OFFICE OF
SHAKEER RAHMAN

<u>            /s/            </u>
Shakeer Rahman

838 East 6th Street
Los Angeles, California 90004
(323) 546-9236
shakeer@loosr.net

*Counsel for Plaintiff*